WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michele Marie Brambila,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-19-08286-PCT-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Michele Brambila's application for disability insurance benefits under Title II of the Social Security Act ("the Act"). Plaintiff filed a Complaint with this Court seeking judicial review of that denial. (Doc. 1.) After reviewing the Plaintiff's Brief (Doc. 14, Pl. Br.), Defendant's Response (Doc. 20, Def. Br.), Plaintiff's Reply (Doc. 24, Reply), and the administrative record (Doc. 11, R.), the Court affirms the decision.

**I.   BACKGROUND[1]**

Plaintiff filed her Title II application for a period of Social Security disability insurance benefits on December 16, 2015. (R. at 14.) Plaintiff's application was denied initially on October 5, 2016 and again upon reconsideration on February 16, 2017. (*Id.*) On October 24, 2018, Plaintiff appeared at a hearing before an administrative law judge ("ALJ"). (*Id.*) The ALJ considered whether Plaintiff has been disabled since March 11, 2015, the alleged beginning date of disability. (*Id.*) The ALJ issued a written

---

[1] In lieu of providing a detailed summary of the entire medical record here, the Court will reference and incorporate certain evidence as appropriate in its analysis.

decision finding Plaintiff not disabled. (R. at 11-28.) On July 29, 2019, the Appeals Council denied review, making the decision final and ripe for this Court's review.[2] (R. at 1-6.)

The ALJ found Plaintiff had "severe"[3] impairments of degenerative disc disease of the lumbar spine, osteoarthritis and osteoporosis of the hips, migraine headaches, anxiety disorder, and affective disorder. (R. at 17.) The ALJ additionally noted two non-medically determinable impairments: alleged fibromyalgia and irritable bowel syndrome. (*Id.*)

The ALJ evaluated the medical evidence testimony and ultimately concluded that Plaintiff has not been disabled since March 11, 2015. (R. at 24.) The ALJ calculated Plaintiff's residual functional capacity[4] ("RFC") and found that she can perform "light work"[5] with certain limitations. (R. at 20.) Specifically, Plaintiff can frequently kneel, crouch, crawl, and climb ramps or stairs; she can occasionally stoop and climb ladders, ropes, or scaffolds; but she is limited to occupations that require no more than occasional contact with the public. (*Id.*) The ALJ considered the testimony of the vocational expert and found Plaintiff capable of performing past relevant work as an assembler of plastic hospital products, a phlebotomist, and/or a hairstylist. (R. at 24.)

## II.   LEGAL STANDARDS

To determine whether a claimant is disabled under the Act, the ALJ follows a five-step analysis. 20 C.F.R. § 404.1520(a); *see also Popa v. Berryhill*, 872 F.3d 901, 905-06 (9th Cir. 2017). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). At step one, the ALJ determines whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not

---

[2] This Court may review the Commissioner's disability determinations under 42 U.S.C. § 405(g): "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

[3] An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

[4] "[R]esidual functional capacity is the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . it requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

disabled, and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled and the inquiry ends; if not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step and determines whether the Commissioner has shown that claimant can perform any other work in the national economy based on the claimant's age, education, work experience, and RFC. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if not, the claimant is disabled. *Id.*

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or if it is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance—it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*

To determine whether substantial evidence supports a decision, the Court must "consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v.*

*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**III.   ANALYSIS**

Plaintiff argues that the ALJ erred in evaluating her claim by: (1) misevaluating the medical opinions in the record and (2) improperly rejecting Plaintiff's symptom testimony. (Pl. Br. at 12, 18-19.) The Court now addresses each argument in turn.

**A.   The ALJ Did Not Err in Weighing the Medical Opinions.**

Plaintiff argues that the ALJ committed materially harmful error by assigning "little weight" to the assessments of Plaintiff's treating nurse practitioner ("NP"), Daniel Knight, while assigning "great weight" to consultative examining physician, Gregory Hunter, M.D. (Pl. Br. at 12.) The Commissioner responds that the ALJ appropriately articulated germane reasons for discounting NP Knight's opinion, namely: (1) inconsistencies between his 2017 and 2018 opinions; (2) the more restrictive nature of his opinions in comparison to regular physical examination functional findings; and (3) his lack of expertise in a relevant specialty field. (Def. Br. at 25-28.)

In assessing a claimant's RFC, the ALJ considers "all of the relevant medical and other evidence," including medical opinion evidence. 20 C.F.R. § 404.1545(a)(3); *see also* 20 C.F.R. §§ 404.1513(a)(2), 404.1527. This includes "acceptable medical sources" like physicians, as well as "other" evidence. *See* 20 C.F.R. §§ 404.1527(a)(1), 404.1545(a)(3).

Although NP Knight's assessment forms were signed by Richard Gibula, M.D., Plaintiff concedes that the record does not show that Dr. Gibula acted as a "supervising physician" to NP Knight and that the assessments made by NP Knight were his alone. (Pl. Br. at 8 n.8.) "[A] nurse practitioner working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not." *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 n.3 (9th Cir. 2012). Thus, Defendant is correct that NP Knight "is not an acceptable medical source, 20 C.F.R. § 404.1502(a); and his opinions are not medical opinions, 20 C.F.R. § 404.1527(a)(1)." (Def. Br. at 25-26.) Instead, NP Knight's

opinions are considered to be from an "other" medical source. *See* 20 C.F.R. §§ 404.1513.

The ALJ is required to evaluate and weigh every medical opinion in the record. 20 C.F.R. § 404.1527(c). The relationship between the medical opinion source and the claimant provides a starting point in deciding how to weigh that source's opinion about the claimant. Generally, the views of doctors who have treated the claimant get top priority. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Opinions of doctors who have examined but not treated the claimant are next in rank. *Id.* Those doctors who have neither treated nor examined the claimant generally get the least consideration. *Id.* Additionally, "[u]nder certain circumstances, the opinion of a treating provider who is not an acceptable medical source may be given greater weight than the opinion of a treating provider who is." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017). This might arise when the non-acceptable medical source provider "'has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.'" *Id.* (quoting 20 C.F.R. § 404.1527(f)(1)).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (citation omitted). An ALJ may do this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id.* To discount "other medical sources," like that of an independent nurse practitioner, the ALJ needs only to give a germane reason for doing so. *Molina*, 674 F.3d at 1111; *Turner v. Comm. Of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

Plaintiff's argument that the ALJ should have afforded NP Knight's opinion, as Plaintiff's treating nurse practitioner, more weight than that of acceptable medical sources (such as consultative examiner Dr. Hunter) is not persuasive. (Pl. Br. at 15-18.) Although NP Knight had seen Plaintiff more often than the other medical practitioners, the ALJ germanely pointed to the inconsistencies in NP Knight's opinions as a reason to assign it

less weight. The ALJ does not need to accept the opinion of any provider if "inadequately supported by clinical findings." *See Thomas*, 278 F.3d at 957. NP Knight's opinions conflict with each other and are inconsistent with the longitudinal medical record. In 2017, NP Knight initially opined that Plaintiff would be able to sit for eight hours in a normal eight-hour workday (R. at 644), but later opined in 2018 that she would be limited to only four hours of sitting in a normal workday and only for a single period of one to two hours at a time (R. at 649). The ALJ noted that NP Knight's later opinion is much more restrictive than indicated in the longitudinal medical record and cited to thirty-two places in the record which show largely normal functioning during physical examinations of Plaintiff. (R. at 23.) While Plaintiff occasionally used a cane to ambulate following her back surgeries, the ALJ noted that treating physicians consistently found that she exhibited normal strength, gait, muscle tone, and range of motion. (R. at 21.)

In addition, the ALJ assigned "little weight" to NP Knight's opinion because NP Knight does not practice in a specialty field. (R. at 23.) The ALJ found that because NP Knight is a primary care provider, and not an orthopedic surgery specialist, the persuasiveness of his opinions regarding Plaintiff's musculoskeletal impairments is limited. (*Id.*) Likewise, the ALJ found that because NP Knight is not a neurologist or mental health practitioner, he is not qualified to opine on the effect of Plaintiff's migraines and mental impairments. (*Id.*) While it may be error for an ALJ to dismiss opinions of general practitioners based only on non-specialist status, *Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987), the ALJ may give more weight "to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists," *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (finding that the ALJ should have given greater weight to a physician with the expertise most relevant to the patient's allegedly disabling condition). Plaintiff points to the court's reversal of the ALJ's decision in *Popa*, 872 F.3d at 907, for the ALJ's improper rejection of the claimant's treating nurse practitioner because "[n]o other medical professional actually treated Popa." However, that reliance is misplaced. Here, NP

Knight's opinions about Plaintiff's functional capacity conflict with assessments in the medical record made by other physician specialists, including treating orthopedic surgeon John Hall M.D. (R. at 304), as well as examining neurologist Gregory Hunter, M.D. (R. at 629-35) and non-examining reviewing physician Michael Keer, D.O. (R. at 83-85). It was appropriate for the ALJ to discount NP Knight's opinion and to give greater weight to the opinions of an examining specialist.

In sum, the ALJ did not err in weighing the medical opinions. It was appropriate for the ALJ to give "great weight" to the medical opinion of examining physician specialist Dr. Hunter, while discounting NP Knight's inconsistent and conflicting non-medical opinions. The ALJ provided germane reasons for giving "little weight" to the non-medical opinions of NP Knight. There is no reversible error.

**B.     The ALJ Did Not Err in Rejecting Plaintiff's Symptom Testimony.**

Plaintiff argues that the ALJ committed material error by rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record as a whole. (Pl. Br. 18-19.) Plaintiff alleges that the ALJ failed to connect the medical evidence to a finding that any specific part of the symptom testimony lacked credibility. (Pl. Br. at 20-21.) Defendant argues that the ALJ provided legally sufficient reasons for finding that Plaintiff's pain testimony was inconsistent with objective medical evidence and other evidence in the longitudinal record. (Def. Br. 18-19). The Court agrees with Defendant.

Plaintiff testified that she has difficulty in performing numerous daily living activities and is unable to work due to degenerative musculoskeletal impairments, mental conditions, and migraine headaches. (R. at 20.) She alleges that the musculoskeletal impairments cause pain in her back and legs; that she experiences migraines between once or twice per week to "every day;" and that she experiences symptoms of depression, anxiety, and irritability. She alleges these impairments limit multiple functional activities including lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, using her hands, understanding information, following instructions,

completing tasks, getting along with others, memory, and concentration. (*Id.*)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison*, 759 F.3d at 1014; 20 C.F.R. § 404.1529(c). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, the ALJ must then evaluate the statements in context of the (1) objective medical evidence and (2) other evidence in the record. *See* 20 C.F.R. §§ 404.1529(c)(2)-(3). The ALJ may then "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so," *Smolen*, 80 F.3d at 1281, and not "merely because they are unsupported by objective medical evidence," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). This requirement is meant to prevent an ALJ from "arbitrarily discredit[ing]" the claimant's subjective testimony. *See Thomas*, 278 F.3d at 958.

Here, the ALJ found the first step threshold met, stating that "[a]fter carefully reviewing the evidence in the record, the undersigned finds the claimant's severe impairments may reasonably have caused the presence of her alleged symptoms." (R. at 20.) In evaluating the second step, however, the ALJ found that "the evidence generally does not support her allegations regarding the severity, frequency, and intensity of her symptoms and their alleged effect on her functional abilities." (*Id.*)

The ALJ highlighted the lack of contemporaneous documentation supporting Plaintiff's subjective pain testimony, such as a self-recorded headache log, hospital visits, or diagnostic imaging scans. (R. at 21-22.) Plaintiff is correct that this was in error. "[T]he absence of medical records regarding alleged symptoms is not itself enough to discredit a claimant's testimony." *Trevizo v. Berryhill*, 871 F.3d 664, 682 n.10 (9th Cir. 2017) (citing *Robbins*, 466 F.3d at 883). However, that error was harmless. The ALJ provided other specific reasons supported by substantial evidence in the longitudinal medical record for discounting Plaintiff's testimony.

Specifically, the ALJ pointed to inconsistencies between Plaintiff's testimony, the objective medical evidence, and the longitudinal record, including Plaintiff's current conservative treatment for pain; her failure to seek treatment for some of her physical and mental conditions; and her failure to consistently follow treatment directives when she did seek treatment. (R. at 21-23.) Plaintiff reported varying frequencies, severity, and presentations of her pain. (*See, e.g.*, R. at 42-43, 55-57, 61, 224, 242, 289, 294, 297, 306, 314-16, 391, 397, 404-05, 419-22, 451, 556, 629, 778-79, 821, 826-27, 832, 847, 941.) She also reported different treatment plans she was following, some prescribed by doctors and some not. (*See, e.g.*, R. at 22, 56, 53, 290, 301, 306, 308, 311, 607, 620, 917.) Plaintiff currently uses only medical marijuana for the pain from her musculoskeletal impairments; she began that treatment despite prior warning from NP Knight that it could worsen her mental conditions. (*See* R. at 53, 857.) For her osteoporosis, she takes a vitamin D supplement and once-per-week prescription medication. (R. at 314.) She was prescribed topiramate in the past for her migraines, and reported it was effective, but no longer takes it either to treat or prevent migraines. (*See* R. at 22, 44, 814, 821-22, 829-30.) She had not seen a neurologist for her migraines in over five years. (*See* R. at 22, 43-44.) She has not consistently gone to physical therapy, despite multiple doctors recommending it. (*See, e.g.*, R. at 292, 299, 304, 312, 450-51, 453-55. 457-59, 738, 804-05, 852, 854, 917.) She reported lapses in taking her prescribed psychotropic medication for her mental conditions, despite finding that they controlled her symptoms. (*See, e.g.*, R. at 613, 856.) She stopped attending therapy for her mental conditions after losing insurance coverage, but still did not start treatment again after obtaining coverage. (R. at 52-53, 368.)

All such evidence was appropriately considered by the ALJ. *See, e.g.*, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can be used to discount pain testimony); *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (the ALJ permissibly "inferred that [plaintiff's] pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an

alternative or more-tailored treatment program after he stopped taking an effective medication"); *Javalera v. Saul*, 806 Fed.Appx. 516, 518 (9th Cir. 2020) (the ALJ appropriately discounted pain testimony where the medical record showed "unremarkable findings such as improved range of motion, normal shoulder strength, and normal sensory and motor functioning that did not substantiate [plaintiff's] claims of disabling neck and shoulder problems").

In sum, the ALJ did not err in weighing Plaintiff's testimony. The ALJ cited substantial evidence in the record to support the discounting of Plaintiff's subjective pain testimony. The ALJ also found Plaintiff's testimony to be unsupported by the medical record. "Credibility determinations are the province of the ALJ. Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, [the court's] role is not to second-guess that decision." *Fair*, 885 F.2d at 604 (citation omitted). There is no reversible error.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** affirming the December 17, 2018 decision of the Administrative Law Judge (R. at 14-24), as upheld by the Appeals Council (R. at 1-6).

**IT IS ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 23rd day of September, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge